SO ORDERED.

SIGNED this 24 day of November, 2009.

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| WATERMARK MARINA OF WILMINGTON, LLC, | 08-08103-8-JRL |
| Debtor. | |
| LEE F. COWPER, INC., | |
| Plaintiff, | |
| v. | |
| WATERMARK MARINA OF WILMINGTON, LLC; BANKFIRST;THE TITLE COMPANY OF NORTH CAROLINA, Trustee; LARRY G. MABE and CAROLYN C. MABE; RICHARD DAVIS, III; FOUR SEASONS EARTHWORKS, INC.; MARINA INSTALLATIONS GROUP, LLC; E&S STEEL, INC.; PAXTON COMPANY; and CHRISTOPHER PRESNELL, | ADVERSARY PROCEEDING NO. L-08-00254-8-JRL |
| Defendants. | |

## ORDER

The matters before the court are the motions for summary judgment filed by Lee F. Cowper, Inc. and BankFirst. A hearing was held in Wilmington, North Carolina on October 28, 2009.

**JURISDICTION AND PROCEDURE**

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

**UNDISPUTED FACTS**

Lee F. Cowper, Inc. (Cowper) is a general contractor in the Wilmington, North Carolina area. On February 7, 2006, Cowper and the debtor entered into a construction contract whereby Cowper would build a marina storage building on the debtor's property, located along the Cape Fear River. The debtor had not yet secured construction lending when Cowper began construction on the property in March 2006. In June 2006, the debtor secured a construction loan from BankFirst to finance the improvements to the property and two deeds of trust were recorded, one on June 30, 2006 and another on July 11, 2006. Cowper's work continued through February 1, 2008 and a claim of lien was filed February 15, 2008, within the 120 day statutory time limit. N.C. GEN. STAT. § 44A-12(b) (2009). Cowper initiated an action in state court to enforce its lien on July 25, 2008, again complying with the statutory time limit. Id. at § 44A-13(a). Cowper has established a *prima facia* showing of a priority lien, relating back to the first furnishing of labor and materials in March 2006. Id. at § 44A-10. Notwithstanding this showing, BankFirst asserts that it has priority resulting from lien waivers executed by Cowper. BankFirst's argument turns on the construction of these purported lien waivers.

The contract between the debtor and Cowper provided that Cowper could submit monthly payment applications to the debtor for work accomplished in the prior month. These progress payments were applied for and paid beginning in May 2006. There were twenty-one such periodic payment applications. While not a requirement of the contract, Cowper submitted to the debtor a document purported to be a lien waiver (Cowper Waivers) along with each progress payment application. In addition, a second set of lien waivers (Watermark Waivers) was purportedly created by the debtor, sending a document for Cowper to sign for each instance that a progress payment was made. Finally, BankFirst asserts that language in the contract between Cowper and the debtor served as a lien waiver (Contract Waiver).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inference in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

### I.

Lien waivers are interpreted according to the principles applied to contracts in general and thus are governed by the expressed intention of the parties. Chemimetals Processing, Inc. v. Schrimsher, 140 N.C. App. 135, 138 (2000). To be effective, a lien waiver must be "clear and unambiguous" and its terms "unequivocally established." 53 *Am. Jur.* 2d, *Mechanics' Liens* § 281 (2008). Questions about the validity of waivers are "resolved in favor of the lien." *Id.*

Applying these principles, the Cowper Waivers begin by Cowper warranting that "all suppliers, vendors and subcontractors have been paid" and that all claims have been settled "for which payment is or will be due and owing." This unambiguous language evinces only a waiver of the lien rights of subcontractors or materialmen and does not waive Cowper's own rights. The final sentence of the Cowper Waivers, "the Company does hereby waive and release any if such claim is asserted or lien is filed or enforces [sic], the Company will indemnify and save harmless the Owner from any loss, damage, or expense arising here from," is nonsensical, and thus so patently ambiguous that the court will not admit evidence as to its meaning.

In relevant part, the Watermark Waivers state that the "release covers a progress payment for all [labor and materials] furnished to the job site through [a specific date] only and does not cover any retention . . . or items furnished after that date." The Watermark Waivers, thus, expressly do not waive lien rights for work that has not been paid and also do not waive lien rights for retainage. The retainage for which lien rights were not waived accrued before BankFirst began its lending relationship with the debtor. As a result, Cowper's lien rights, which relate back to the first furnishing of materials, N.C. GEN. STAT. § 44A-10 (2009), have

priority over BankFirst.  N.C. GEN. STAT. § 47-20 (2009) (deed of trust not valid to "pass any property as against lien creditors . . . but from the time of registration" of which the earliest is presumed to have priority); See also Metropolitan Life Ins. Co. v. Rowell, 113 N.C. App. 779, 785 (1994) (finding that a lien relating back to the first furnishing of labor and materials has priority over a subsequently filed deed of trust where a claim of lien had been properly filed).

      Finally, Section 9.3.3 of the general agreement, on which BankFirst's Contract Waiver theory relies,  provides that Cowper "warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall . . . be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work." While Cowper has complied with the provision, it does not waive Cowper's own rights.  The liens persist, dating to the first furnishing of materials, to the extent that Cowper has not been paid and to the extent that retainage has not paid.

## II.

Four Seasons Landscaping (Four Seasons) filed a claim of lien against the debtor arising out of work first furnished January 1, 2006, prior to Cowper's start date.  Four Seasons filed a state suit to enforce this lien and was awarded a default money judgment which it subsequently recorded.  It is clear that despite the assertion that it was only an interlocutory judgment of the state court clerk, Four Seasons made a strategic choice to execute on a default judgment rather than pursue its lien position.  North Carolina law is clear that once that choice has been made, lien rights can no longer be enforced.  See N.C. GEN. STAT.§ 44A-13 (2009) ( noting that

judgments enforcing liens must direct the sale of real property subject to the lien);  Miller v. Lemon Tree Inn, Inc., 32 N.C. App. 524, 529 (1977) (noting that to enforce a materialmen's lien "the judgment must state the effective date of the lien and contain a general description of the property subject to the lien").

### III.

In addition to seeking summary judgment against each other, Cowper and BankFirst ask the court to grant their motions as to the nine additional parties listed in this proceeding.  Having evaluated the merits of their claims, the response filed by Four Seasons and having no appearance by the other parties, the facts set forth are undisputed.  Based on the foregoing, Cowper's motion for summary judgment is GRANTED as to all parties.  As such, BankFirst's motion is DENIED as to Cowper, but GRANTED as to all others.

**END OF DOCUMENT**